**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

```
-------------------------------------------------------------X
LORI BAGEARD, Individually and On          :
Behalf of All Others Similarly Situated,   :
                                           :
                 Plaintiff,                :
                                           :          Case No.: 8:16-cv-03086-MSS-JSS
      -against-                            :
                                           :
ASPEN DENTAL MANAGEMENT, INC.,             :
                                           :
                 Defendants.               :
-------------------------------------------------------------X
```

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff Lori Bageard (the "Named Plaintiff"), individually and on behalf of the collective of individuals who previously joined this matter; and Defendant Aspen Dental Management, Inc. ("ADMI" or "Defendant") file this Joint Motion for Approval of Settlement and request that the Court approve the parties' Joint Stipulation and Release (the "Agreement") and dismiss this action with prejudice.

## I.     INTRODUCTION

The settlement memorialized in the parties' Agreement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant information exchange and contested litigation, and was the result of arm's length settlement negotiations conducted by experienced counsel well versed in applicable law, and with the assistance of a neutral mediator.  Accordingly, the parties request that the Court:  (1) approve as fair, adequate and reasonable the $1,780,000.00 settlement set forth in the Agreement (Exhibit 1); (2) approve the proposed Notice of Settlement ("Notice Form") attached as Exhibit B to the Agreement and the proposed distribution method; (3) approve Rust Consulting, Inc. as the

Settlement Administrator; (4) dismiss the lawsuit with prejudice; (5) award Plaintiffs' attorneys fees of one-third of the Gross Fund in the amount of $593,333.33 and costs in the amount of $21,428.27; (6) award a Service Award of $10,000.00 to the Named Plaintiff; (7) retain jurisdiction to enforce the settlement; and (8) grant any other further relief that this Court deems just and proper.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed on November 1, 2016 by the Named Plaintiff.  Thereafter, sixteen additional individuals opted into this case (collectively, "Opt-in Plaintiffs," and with Named Plaintiff, "Plaintiffs").  Plaintiffs were employed as exempt-classified Office Managers ("OMs"),[1] i.e., the "highest ranking," non-doctor employee in the office.   Notwithstanding this characterization, Plaintiffs assert that they were misclassified as exempt and were not paid for overtime worked in excess of 40 hours per workweek in violation of the FLSA.  More specifically, they contend they did not regularly perform "management duties" such as hiring, firing, disciplining, or setting rates of pay for employees.  Rather, Plaintiffs contend that their primary duties were substantially similar to those of non-exempt employees and included:  customer service; scheduling patient appointments; selling services and financing plans to patients; answering phones; and clerical and data entry duties.  Plaintiffs further allege that OMs were expected to and regularly did work more than 40 hours per workweek without overtime compensation, in violation of the FLSA.

Defendant denies these allegations in their entirety and contends that OMs were properly classified as exempt under one or more exemptions to the FLSA's overtime provisions, and

---

[1]     The OM designation also includes time OMs were classified as exempt while in training (also referred to by ADMI as Office Managers in Training).

properly compensated for all time worked.  Specifically, Defendant asserts that Plaintiffs and other OMs were exempt under the administrative and/or executive exemptions.

Both before and during the litigation, the parties and their counsel conducted a thorough investigation into the merits of their respective claims and defenses.  Plaintiffs' Counsel conducted in-depth interviews with the Plaintiffs and other witnesses, obtained statements, and reviewed extensive written materials including time records, pay records, job descriptions, training manuals, employment agreements, performance standards and evaluations, disciplinary actions, and correspondence.  Defendant's counsel likewise engaged in an extensive investigation, including employee interviews and review of documents.  The parties engaged in written discovery, and exchanged and reviewed related documents.

Following this exchange, on February 8, 2017 the parties entered into a Stipulation for Conditional Certification of a Nationwide FLSA Collective and Court-Authorized Notice to the Collective ("Conditional Certification Stipulation").  D.E. 48.  On February 21, 2017, the Court entered an Order approving the parties' Conditional Certification Stipulation, and authorized the issuance of notice to all OMs employed by Aspen Dental branded practices during the relevant time period.  Accordingly,  notice of their right to opt into the litigation was mailed to 1,769 OMs on March 28, 2017, and thereafter 401 OMs timely opted-into the litigation, in addition to the seventeen Plaintiffs who joined the litigation prior to notice, for a total of 418 OMs participating in this case.

After the close of the notice period on June 5, 2017, the parties agreed to attend mediation. The parties then engaged in the exchange of additional information and data, and Plaintiffs' Counsel reviewed extensive compensation data for the collective such that the parties were able to determine the potential value of the claims.

The parties participated in full day mediation on September 22 2017, with mediator John R. Phillips, Esq. who is experienced in complex wage and hour cases.  Although the parties were unable to resolve this matter during mediation, they continued to discuss potential settlement with the aid of the mediator while proceeding with discovery, and eventually accepted a mediator's proposal resulting in resolution of the collective's claims on December 4, 2017.  Thereafter, the parties negotiated the details of the full and final settlement of this litigation, and drafted the Agreement and Notice Form, attached hereto as Exhibit 1 and Exhibit B thereto, respectively.  The Agreement was fully executed on March 26, 2018.

Pursuant to the parties' Agreement, the Notice Form will issue only to the 418 OMs who previously joined the case, who are or were employed as Aspen Dental OMs at any time from June 23, 2013[2] through March 26, 2018, and previously submitted a consent to join form to opt into the lawsuit ("Eligible Settlement Members").

The Agreement negotiated and achieved by the parties constitutes a reasonable compromise of all of the disputed issues raised by the OMs in this action.  All parties were counseled and represented by their respective attorneys throughout the settlement process.  The parties now seek Court approval of the Agreement, attached as Exhibit 1.

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Gross Settlement Amount

The parties have agreed to the Gross Settlement Amount.  After payment of attorneys' fees and costs, a service award to Named Plaintiff, and the Settlement Administrator's fees and costs, as discussed *infra*, the remaining amount comprises the Net Settlement Fund, from which the 418 Eligible Settlement Members who participate in the settlement will receive payment.

---

[2]     The parties entered into an agreement to toll the statute of limitations for Eligible Settlement Members effective June 23, 2016.

### B.      Notice of Settlement to Eligible Settlement Members

Within ten (10) days of the entry of an Order Granting Approval of Settlement ("Approval Order"), Defendant will provide a list of each Eligible Settlement Member's name, social security number, and Eligible Workweeks (defined as all weeks worked by each Eligible Settlement Member as an exempt OM from June 23, 2013 through March 26, 2018).  Exhibit 1 at 1.6, 2.6.  At the same time, Plaintiffs' Counsel will provide the Settlement Administrator with a list of each Eligible Settlement Member's contact information.  *Id.* at 2.6.  Within five (5) days of the entry of the Approval Order becoming a non-appealable, final order, the Settlement Administrator will issue via e-mail and First Class U.S. Mail the approved Notice Form to all Eligible Settlement Members.  *Id.* at 2.8.  The Notice Form alerts each Eligible Settlement Member to the terms of the settlement, their individual settlement allocation, and the scope of the release *if* they elect to participate in the settlement.  *Id.* at 10.11, Exhibit B to Agreement.

Prior to the issuance of Settlement Checks, the Settlement Administrator will allocate ninety (90) days ("Settlement Acceptance Period") after mailing of the Notice Form for Eligible Settlement Members to return execute Release and Claim Forms, accepting the Agreement's terms and providing a limited release of claims, as discussed *infra*.[3]  Exhibit 1 at 2.9.  Additionally, forty-five (45) days after issuance of the Notice Form, the Settlement Administrator shall issue a letter via e-mail and First Class U.S. Mail to all Eligible Settlement Members inquiring whether they received the Notice Packet.  *Id.*

Twenty-one (21) days after the close of the Settlement Acceptance Period, the Settlement Administrator will issue Settlement Checks to all Eligible Settlement Members, with release language to be printed on the back of each Settlement Check.  *Id.* at 2.13.  Eligible Settlement

---

[3]      The Agreement provides additional time for Eligible Settlement Members who require a Notice Form be re-mailed to them, or who need time to cure an improperly complete Release and Claim Form.  *Id.* at 2.10, 2.12.

Members may accept the terms of the Agreement and provide a limited release of claims (as further discussed *infra*) either by properly executing and returning a Release and Claim Form, or endorsing/otherwise negotiating their Settlement Check.  *Id.* at 4.1.

### C.    Eligible Settlement Member Allocation Formula

Each Eligible Settlement Member's estimated proportionate share of the Net Settlement Fund will be determined by the Settlement Administrator in accordance with the allocation formula in the Agreement, which is based on the number of Eligible Workweeks each Eligible Settlement Member worked.  *Id.* at 1.22, 3.4.  The calculation of Eligible Workweeks shall be based on Defendant's business records.

### D.    Releases

By participating in the settlement, Eligible Settlement Members will waive, release, and forever discharge ADMI and its subsidiaries, affiliates, business units, members, shareholders, and its predecessors and successors, officers, directors, agents, employees, and assigns, and all Aspen Dental-branded dental practices supported by ADMI, together with their respective predecessors and successors, officers, directors, agents, employees, and assigns, from any and all federal, state and local wage and hour claims that accrued while employed at an ADMI and/or Aspen Dental-branded dental practice supported by ADMI as an OM, from June 23, 2013 through the earlier of sixty (60) days after filing of the Approval Motion or the Court's entry of the Approval Order, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses (collectively, "Released Claims").  *Id.* at 4.1.

The Named Plaintiff also will execute a general releases of all claims against Defendant in exchange for a Service Award (subject to Court approval), in recognition of the assistance she

provided in obtaining the overall settlement for the collective, as further discussed at Section IV.D, *infra*. *Id.* at 4.3.

### E.      Claims Administration

The parties have retained Rust Consulting, Inc. to serve as the Settlement Administrator. The claims administration fee of no more than $24,000.00 will be paid out of the Gross Settlement Amount. *See* Exhibit 2 (Rust Consulting, Inc. Administration Estimate).

### F.      Attorneys' Fees and Litigation Costs

Under the terms of the Agreement, subject to Court approval, Plaintiffs' Counsel is to receive one-third of the Gross Settlement Amount which represents payment of all reasonable attorneys' fees, plus recoupment of reasonable costs actually incurred associated with the litigation, as further discussed at Section IV.E, *infra*. Defendant is unopposed to this payment. *Id.* at 3.2(A).

## IV.    <u>ARGUMENT</u>

### A.      Standards for FLSA Settlements

The parties to an FLSA action can resolve the dispute and enter into a valid waiver of an employee's FLSA claims where:  (i) the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor, or (ii) the parties present a proposed settlement to a district court which approves the fairness of the settlement. *See Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  In discussing the approval of FLSA settlements, the Eleventh Circuit has noted:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere

waiver of statutory rights brought by an employer's overreaching.  If a settlement
in an employee FLSA suit does reflect a reasonable compromise over issues, such
as FLSA coverage or computation of back wages that are actually in dispute, we
allow the district court to approve the settlement in order to promote the policy of
encouraging settlement of litigation.

*Id.* at 1354.

"In deciding whether a settlement is fair and reasonable, the court considers the following factors: '(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.'"[4] *Trentman v. RWL Communs., Inc.*, No. 2:15-cv-89-FtM-38CM, 2015 U.S. Dist. LEXIS 113966, at *4 (M.D. Fla. Aug. 26, 2015).  An FLSA settlement may be approved as fair even where plaintiffs receive in settlement substantially less than the amount they originally claimed.  *Rutland v. Visiting Nurse Assoc. of Central Fla., Inc.*, 2008 U.S. Dist. LEXIS 61776 (M.D. Fla. July 29, 2008).  Discovery – including the production of records – as well as the risks associated with litigation and the viability of certain defenses, all may cause a plaintiff to settle for substantially less than the original amount claimed.  *See id.* (approving FLSA settlement where named plaintiff settled for approximately 6% of the wages she originally claimed); *Edwards v. CFI Sales & Mktg.*, No. 6:09-cv-234-Orl-28GJK, 2011 U.S. Dist. LEXIS 134705, at *13 (M.D. Fla. Nov. 4, 2011) (approving settlement where plaintiffs recover was well below that stated in court interrogatories).  In addition, the dispute over the proper method for calculating damages ("time-and-one-half" versus the "half-time" or "fluctuating workweek" method), liquidated damages and the applicable statute of limitations may cause an FLSA plaintiff

---

[4]     With regard to the first of the six factors, there is no fraud or collusion here, and nothing in the record to even remotely suggest any taint to the settlement.  The other five factors are addressed and incorporated herein, *infra*.

to accept substantially less in settlement than originally claimed.  *See Ford v. Property Preservation Experts, Inc*., 2012 U.S. Dist. LEXIS 107194 (M.D. Fla. July 31, 2012) (approving FLSA settlement where one opt-in plaintiff settled for less than 3% of his original claimed back wages).  In short, "[t]he Court should be mindful of the strong presumption in favor of finding a settlement is fair."  *Id.* at *3 (internal citations omitted).

### B.     This Settlement Represents a Fair and Reasonable Resolution of a *Bona Fide* Dispute

The settlement is fair because it is a reasonable compromise of a *bona fide* dispute regarding Eligible Settlement Members' unpaid wages, reached via arms' length negotiation between adversarial parties and counsel, necessitating the aid of a mediator reach resolution.  This dispute was a hotly contested litigation in which Defendant put forth significant evidence of several affirmative defenses, which may have presented barriers to Plaintiffs' success on the merits, making continued litigation expensive and lengthy, with no certainty of success on the merits.

First, Defendant indicated that it intended to seek decertification of the collective because of the alleged differences between the duties and individualized circumstances of each Eligible Settlement Member, including arguing that each ADMI-branded dental practice was independently owned and operated.  Second, Defendant argued that the Eligible Settlement Members' primary duties—that is, the primary duties of the highest-ranking, non-doctor employees in the branch—were managerial in nature and Eligible Settlement Members were exempt under the executive and/or administrative exemptions.  Eligible Settlement Members faced *significant* risk in their ability to prevail in these claims at trial.  Third, Defendant argued that regardless of the classification, Eligible Settlement Members did not work more than 40 hours per week, and there were no contemporaneous time records to establish the hours actually worked by

the Eligible Settlement Members.  Fourth, Defendant argued that even if Eligible Settlement Members prevailed on liability, damages should be calculated using the half-time/fluctuating workweek method, rather than the time and one-half method.  Fifth, Defendant argued that independent counsel had previously analyzed the exemption decision, providing Aspen a written opinion regarding same, and thus ADMI maintained the classification in good faith reliance on advice of counsel and did not act willfully in allegedly violating the FLSA, such that a two-year, rather than a three-year, statute of limitations would be imposed and liquidated damages would be avoided.  These issues, as well as others asserted by Defendant, presented significant hurdles for Plaintiffs to overcome.  However, through negotiation, the parties reached a compromise that took into consideration all of these factors.

As a result of these negotiations, on average, each Eligible Settlement Members' gross share of the settlement is approximately $4,258.37.  This amount represents a fair and reasonable settlement given the risk of decertification, the defenses raised (including Defendant's contention that the position was properly classified as exempt), uncertainties surrounding the amount of unpaid overtime claimed, and the potential application of a half-time measure of damages.

Additionally, as discussed above, the relevant period in this matter is June 23, 2013 through March 26, 2018.  While the claims of many Eligible Settlement Members would have expired pursuant to the FLSA's two-year statute of limitations, the parties here negotiated a full three-year statute of limitations period based on the date of filing of the complaint to allow a larger number of individuals to benefit from the Agreement and receive a settlement award.[5]

---

[5]     Moreover, based on Plaintiff's Counsel's ability to negotiate a tolling agreement with ADMI, the settlement was able to include time worked by OMs beyond the regular, three-year statute of limitations.

Given these factors, Plaintiffs' Counsel believe, based on their experience and professional judgement, that the settlement represents a fair and reasonable compromise of the disputed claims in this litigation.

## C.   The Proposed Notice Form Should Be Approved

The Court should approve the proposed Notice Form attached as Exhibits B to the Agreement (Ex. 1).  The proposed Notice Form sufficiently informs each Eligible Settlement Member of the Agreement's terms, including the allocation formula, the estimated amount they will receive in settlement, the scope of the release, applicable time-table, and the approved service award, attorneys' fees and costs.

## D.   The Service Award Should Be Approved

The Agreement also provides for a Service Award to the Named Plaintiff in recognition of the assistance she provided in obtaining the overall settlement for the Eligible Settlement Members.  The Named Plaintiff submits that this Service Award is appropriate to compensate Named Plaintiff for her diligence, commitment and investment of time and expense.  Specifically, Named Plaintiff identified the claims asserted and led this collective action lawsuit by participating in discovery and extensive meetings and conferences, responding to questions, reviewing, analyzing and interpreting documents, and aiding Plaintiffs' Counsel in preparing for mediation. Defendant does not oppose Named Plaintiff's request for a Service Award.[6]

---

[6]   Representation payments to compensate named plaintiffs for their diligence and involvement are routinely approved in FLSA collective actions by federal courts in Florida.  *See, e.g.*, *Tam Su v. Electronic Arts, Inc*., 2006 U.S. Dist. LEXIS 98894, *18 (M.D. Fla. Aug. 29, 2006) (granting $10,000.00 service award in FLSA matter); *see also Devries, et al. v. Morgan Stanley & Co. LLC, et al.*, Case No. 9:12-cv-81223 (granting service awards in amounts as high as $10,000.00 to 35 plaintiffs for their assistance in obtaining settlement for the collective); *Cooper-Gutteman, et al. v. TMS Health, LLC, et al.*, Case No. 9:13-cv-81265-KAM, D.E. 38 (S.D. Fla. July 15, 2015) (granting service awards in amounts as high as $10,000.00 to six plaintiffs for the assistance they provided in obtaining the settlement for the class even though they did not sit for deposition); *Evans v. Comcast Corp., et al.*, Case No. 9:12-cv-81203-KAM, D.E. 157 (S.D. Fla. Oct. 22, 2014) (granting service awards totaling $15,000.00 to five plaintiffs who sat for deposition); *Mosser v. TD Bank, N.A. (In re Checking Account Overdraft Litig.*, MDL No. 2036), 2013 U.S. Dist. LEXIS 187627, at *91 (S.D. Fla. Mar. 18, 2013) (granting incentive awards as high as $10,000.00 to named plaintiffs

### E.     The Attorneys' Fees and Costs Are Reasonable and Should Be Approved

For their efforts on behalf of the Eligible Settlement Members, Plaintiffs' Counsel are applying for compensation from the Gross Settlement Amount on the basis of a percentage fee, seeking one-third of the Gross Settlement Fund as attorneys' fees plus costs, which method of compensation was agreed to by the Named Plaintiff via her retainer agreement with Plaintiffs' Counsel and with Eligible Settlement Members via the Court-Authorized Notice of conditional certification.  *See* D.E. 48-1 at 4, 6.  Plaintiffs submit that the fee sought is a reasonable amount of compensation.  The percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interests of the class and most fairly correlates counsel's compensation to the benefit conferred on the class.  Defendant does not oppose this request.

### 1.     A Fee of One-Third of the Gross Settlement Fund Is Reasonable in FLSA Common Fund Cases Such as the Instant Matter

It has long been recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The purpose of this doctrine is to avoid unjust enrichment and to spread litigation costs proportionately among all beneficiaries.  *Id.*  This common fund doctrine is not only firmly rooted in American case law, *see, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), but it is also well-established in the Eleventh Circuit.  *See Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. Fla.

---

in Rule 23 class for the actions they took to protect the claimants, the degree to which others benefited, and the amount of time and effort the plaintiffs expended); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008) (hybrid FLSA/Rule 23 action); *Shores v. Publix Super Markets, Inc.*, Case No.: 95-1162-CIV-T-25E, D.E. 319, at 90-91 (M.D. Fla. May 23, 1997).

1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *see also Vogenberger v. ATC Fitness Cape Coral*, LLC, 2015 U.S. Dist. LEXIS 53960, at *11 (M.D. Fla. Apr. 15, 2015) (approving 33% of fund as a reasonable attorneys' fee in FLSA collective action); *Moultry v. Cemex,* 8:07-cv-453-T-MSS, Dkt. 145 (M.D. Fla., Aug. 20, 2008) (same); *Mansfield v. Castaways Backwater Café, Inc.,* 2008 U.S. Dist. LEXIS 62909 (M.D. Fla. Aug. 18, 2008) (approving 40% contingency fee from settlement amount in FLSA collective action); *Angione, et al. v. PSS World Medical, Inc.,* 3:02-00854 (M.D. Fla. Nov. 5, 2004) (approving 40% of common fund as attorneys' FLSA action); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00 CV 435-RH, Dkts. 14-15 (N.D. Fla. 2001) (approving one-third of settlement as attorneys' fee in FLSA settlement).

Moreover, courts in common fund cases in the Eleventh Circuit have awarded fees at or above the one-third requested here.  *See, e.g., Camden I Condominium Ass'n*, 946 F.2d 768 at 774-75 ("an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded"); *see also supra Vogenberger* (33%); *Moultry* (33%); *Mansfield* (40%); *Angione* (40%); *Kemper* (one-third).

### a. A Fee of One-Third of the Gross Settlement Fund Is Patently Reasonable in This Case and Should Be Approved

In collective FLSA actions, "the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination.  However, the FLSA does not require the Court to conduct an in depth analysis . . . unless the unreasonableness of such award is apparent from the face of the documents."  *Hosier v. Mattress Firm, Inc.*, 2012 U.S. Dist. LEXIS 94958, at *16, No. 3:10-cv-294-J-32JRK, 2012 U.S. Dist. LEXIS 94958, *16 (M.D. Fla. June 8, 2012). Here, where Plaintiffs' Counsel has put forth substantial effort and expended numerous hours both prior to and throughout the litigation, located and interviewed witnesses, discussed the facts and

litigation strategy with Plaintiffs, completed preliminary discovery, undertook substantial efforts to research and prove the case, supervised the notice process to all putative collective members and the filing of consent to join forms by the Eligible Settlement Members, began exchanging post-conditional certification discovery, prepared for and attended a full day mediation, negotiated at length the settlement of the claims, drafted the settlement documents and worked towards the approval of the Agreement, and will continue to expend attorney hours through the conclusion of this matter including overseeing the settlement notice process and providing legal advice to Eligible Settlement Members, the fee earned is patently reasonable on its face. *Id.* at *17 (finding that the percentage of the fund requested was patently reasonable based solely on the fact that the fee request was uncontested, plaintiffs' counsel was experienced in FLSA actions and expanded numerous hours in the case); *Lytle v. Lowe's Home Ctrs., Inc.*, 2014 U.S. Dist. LEXIS 160842, at *11 (M.D. Fla. Nov. 17, 2014) (percentage of the fund requested was "reasonable on its face" simply because it was uncontested).

> **b.**     **Assuming *Arguendo* That the Fee Is Not "Patently Reasonable," the Requested Fee Is Reasonable Under the Specific Circumstances of This Case**

Assuming *arguendo* that the requested fee is not "reasonable on its face," the Court should still find the fee reasonable under the circumstances. When determining whether a fee request is reasonable under the circumstances, courts consider:

> (i) the time and labor required;
> (ii) the novelty and difficulty of the questions involved;
> (iii) the experience, reputation, and ability of the attorneys and the skill requisite to perform the legal services properly;
> (iv) time limitations imposed by the client or the circumstances;
> (v) the amount involved and the results obtained;
> (vi) the "undesirability" of the case;
> (vii) whether the fee is fixed or contingent; and
> (viii) the customary fee and awards in similar cases.

*Stahl v. Mastec, Inc.*, 2008 U.S. Dist. LEXIS 120887, at *4-5 (M.D. Fla. May 20, 2008) (citing *Camden I Condominium Assoc., Inc.*, 946 F.2d at 768). In light of these considerations, Plaintiffs' fee request is reasonable.

### i.      The Time and Labor Required

Plaintiffs' Counsel has spent a considerable amount of time on this case. The total lodestar to date for the work performed is $352,482.50. Declaration of Gregg I. Shavitz in Support of Joint Motion for Approval of Settlement ("Shavitz Decl."), attached as Exhibit 3, at ¶ 14. This reflects the time actually spent in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in detailed time records. *Id.* at ¶¶ 13-15. The work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, in conjunction with the discovery of the case and the work involved in negotiating and effectuating the Agreement. *Id.* at ¶¶ 15-16. In light of the work performed to date, the requested fee reflects a multiplier of only 1.68. However, this amount does *not* reflect the time still to be incurred in overseeing the administration of the claims process and this settlement, resolving issues with the Settlement Administrator and Defendant's counsel, and speaking with Eligible Settlement Members about the administration and the settlement. *Id.* at ¶ 16. By the conclusion of this matter, Plaintiffs' Counsel estimates that they will have incurred a total of approximately $372,482.50 or more, bringing Plaintiffs' Counsel's estimated multiplier to as little as 1.59 or less. *Id.* at ¶ 16.[7] Thus, the fee requested is more than fair given the actual time already invested.

---

[7]      "Courts in common fund cases regularly award multiples of 2 to 3 times lodestar in attorney's fees to reflect the quality of the work performed and the risks undertaken." *Ressler v. Jacobson*, 149 F.R.D. 651, 653 n.4 (M.D. Fla. 1992) (collecting cases finding multipliers of between 3 and 4.5 to be appropriate); *accord Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at *35 (S.D. Fla. Oct. 14, 2016) (finding 3.58 multiplier to be reasonable and awarding one-third of the settlement as attorneys' fees).

### ii. The Novelty and Difficulty of the Questions Involved

This case involved numerous unresolved and evolving legal issues which would have been presented throughout litigation.  Had this Agreement not been reached, these factual and legal questions would have been the subject of many hours of depositions and trial testimony.  Furthermore, the parties would have briefed collective action decertification, which would have been vigorously pursued by Defendant.  Additionally, numerous issues would be raised in Plaintiffs' attempt to prove Defendant liable with respect to this "higher-level" management position.  Given the inherent complexities of this wage and hour class action, the fee requested is more than fair.

### iii. The Experience, Reputation, and Ability of the Attorneys, and the Skill Requisite to Perform the Legal Services Properly

The quality and efficiency of Plaintiffs' Counsel's work on this case was superior and is reflected in the result.  Plaintiffs' Counsel has specific expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage and hour litigation.  *Id.* at ¶ 9.  Plaintiffs' Counsel submits that they put together a persuasive case in the face of the Defendant's strong defenses, evidence, and arguments to the contrary.  The settlement is in part a direct result of effective lawyering and the acumen and diligence of Plaintiffs' Counsel.

### iv. Time Limitations Imposed By the Client or the Circumstances

In part through Plaintiffs' Counsel's efforts, the parties agreed to conditional certification and notice, maximizing potential recovery for Eligible Settlement Members, whose claims would otherwise have been subject to a continually running statute of limitations, In addition, in part due

to Plaintiffs' Counsel's expertise, the parties here entered into an early tolling agreement which provided some Eligible Settlement Members compensation for additional weeks worked beyond the applicable limitations period.

### v.     The Amount Involved and the Result Obtained

Many courts recognize that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd,* 899 F.2d 21 (11th Cir. 1990).  Through diligent pursuit of the claims and skillful negotiation, Plaintiffs' Counsel achieved a gross award of approximately $4,258.37 per Eligible Settlement Member.  Such a result is a strong one in light of the fact that in this case, it was not a low-level manager claiming to have been misclassified, but rather it was the highest ranking of managers, the office manager, challenging their classification.  Defendant was not interested in discussing settlement pre-suit when the below counsel reached out to discuss these claims, and only through the pressures of litigation was such a result able to be negotiated for 418 OMs.  The case involved many complex issues, including whether it would have been decertified had it not settled, as well as the applicability of Defendant's defense of good-faith reliance on counsel. Moreover, the settlement provides consideration for the full three years of the statute of limitations, even in light of the strength of such affirmative defense.  Under these circumstances, it would have been very challenging in the absence of a settlement for Plaintiffs to carry their burden of proof to demonstrate an office manager was willfully misclassified to get more than only two years of back-pay; however, those damages were achieved through settlement.

It should also be noted that the release required from Eligible Settlement Members to participate in the settlement is limited – not general – in nature.[8]  This means that the substantial amount allocated to each Eligible Settlement Member constitutes consideration for the release of wage and hour claims that accrued during employment as an OM, *only*.  Any other claims that Eligible Settlement Members may have (e.g., discrimination, wrongful discharge, etc.) are unaffected.  Similarly, any wage and hour claims that accrued during Eligible Settlement Members' time in a position other than OM, are also unaffected.

### vi.     The "Undesirability" of the Case

From the outset, Plaintiffs' Counsel faced many risks in pursuing this litigation on behalf of the "high ranking" OM position to successful conclusion, making this particular matter "undesirable" to other prospective plaintiff's lawyers.  The resources available to Defendant required Plaintiffs' Counsel to expend professional and financial resources.  In addition, had this settlement not been achieved, Plaintiffs faced expensive discovery and motion practice, depositions of collective members and their supervisors and other witnesses, lengthy fact and expert discovery, a costly jury trial, and years of post-trial appeals, with ultimate success far from certain.  At the time of settlement, the risks and uncertainties of continued litigation made it far from certain that an ultimate recovery would be obtained.  Plaintiffs' Counsel received no compensation during the course of this nearly two-year long litigation (from first reaching out to ADMI to discuss these claims through present).  Any fee award to Plaintiffs' Counsel has always been at risk and completely contingent on the result achieved, further underscoring the apparent "undesirability" of this case and supporting the requested fee.

---

[8]      Although the Named Plaintiff will grant a general release in exchange for her Service Award, "courts within this district have approved general releases in FLSA cases when the plaintiff receives compensation that is separate and apart from the benefits to which plaintiff is entitled under the FLSA.  *Pfeuti v. Naples Transportation & Tours, LLC*, No. 2:16-cv-364-FtM-CM, 2016 U.S. Dist. LEXIS 158558, at *7 (M.D. Fla. Nov. 16, 2016)

### vii.    Whether the Fee Is Fixed or Contingent

A determination of a fair fee should include consideration of the contingent nature of the fee and the difficulties overcome in obtaining a settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See Richard Posner, Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994).

Plaintiffs' Counsel received no compensation during the course of this litigation while simultaneously spending a substantial amount of time to obtain this result.  Any fee award to Plaintiffs' Counsel has always been completely contingent on the result achieved and on this Court's exercise of its discretion in approving Plaintiffs' fee request.

### viii.    The Customary Fee and Awards In Similar Cases

Finally, as outlined *supra*, the fee requested here is in line with those awarded by District Courts in this Circuit.  *See, e.g.*, *supra Vogenberger*; *Moultry*; *Mansfield*; *Angione*; *Kemper*.  This Court should follow the established precedent of the Eleventh Circuit, find Plaintiffs' fee request reasonable in light of the circumstances, and grant same.

### 2.    Costs Sought Are Reasonable and Represent the Actual Costs Expended

The award of costs sought by Plaintiffs' Counsel is reasonable in light of the scope of this litigation and represents *actual* costs and expenses incurred by Plaintiffs' Counsel, including court fees, service of process, photocopying, postage/express mail, telephone, Pacer/Lexis research, conditional certification notice administration fees and costs, and mediation costs.  Shavitz Decl. (Exhibit 3) at ¶ 17.  These books and records are prepared from expense vouchers, receipts, and

check records; are accurate regarding all the expenses incurred; and constitute hard, out-of-pocket monetary expenses from the beginning of the case. Plaintiffs' Counsel was aware such costs and expenses might not be recovered and, at the very least, would not be recovered until the litigation was successfully resolved. This reasonable request for costs should be granted.

### F.     An Objection Process Is Not Warranted

Courts may approve settlements of conditionally certified FLSA opt-in collective actions—which are starkly different from Fed. R. Civ. P. 23 opt-out class actions—prior to considering a defendant's decertification motion, without the need for a "fairness hearing," or "objection period." *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 U.S. Dist. LEXIS 136497, at *5-6 (M.D. Fla. Aug. 24, 2017) ("The Court finds persuasive the authorities cited by the parties in which jurists on this Court approved a settlement at the conditional certification stage without requiring a final certification prior to approving a settlement); *see also Czopek v. Tbc Retail Grp., Inc.*, No. 8:14-CV-675-T-36TBM, 2016 WL 7116112, at *2 (M.D. Fla. Nov. 7, 2016), *report and recommendation adopted*, No. 8:14-CV-675-T-36TBM, 2016 WL 7104187 (M.D. Fla. Dec. 6, 2016) (approving collective settlement without "decertification analysis" even with a portion of the settlement allocated to "non-qualifying plaintiffs."); *Trentman*, 2015 U.S. Dist. LEXIS 113966, at *6 (granting approval of settlement on behalf of conditionally certified collective); *Edwards*, 2011 U.S. Dist. LEXIS 134705, at *9 (same); *Reina-Mujica v. Avatar Props.*, No. 6:08-cv-2000-Orl-35KRS, 2009 U.S. Dist. LEXIS 135584, at *5-6 (M.D. Fla. Aug. 31, 2009) (same).[9] The Eleventh Circuit has explained that "it is

---

[9]     While this Circuit recognizes a two-tiered process for FLSA collective actions, it is well established that "[t]he second stage is [only] triggered by an employer's motion for decertification." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). Notwithstanding that a decertification/final certification decision is unnecessary for settlement approval purposes, here, Defendant, *for settlement purposes in this specific case only*, stipulates to final certification and does not oppose Plaintiffs' assertion that all Eligible Settlement Members were "similarly situated" as they were employed by ADMI as exempt classified OMs and all allege they were misclassified as such, were subject to the same job expectations as reflected in ADMI's OM job description, all allege to have

clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated

to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure."

*Morgan*, 551 F.3d at 1259 n. 36 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12) (11th

Cir. 1996). Specifically, in an "FLSA action, unlike in a Rule 23 class action, a named plaintiff

can represent others only when they affirmatively opt-in to the case." *Stein v. Buccaneers Ltd.*

*P'ship*, 772 F.3d 698, 708 (11th Cir. 2014). For this reason, the due process considerations which

are analyzed in the approval of a settlement of a Rule 23 opt-out class action are inapplicable to

the approval of the settlement an FLSA opt-in collective action. *Haynes v. Singer Co*., 696 F.2d

884, 886 (11th Cir. 1983) ("the due process concerns [in Rule 23 opt-out class actions] . . . have

no counterpart in a section 16(c) class action."); *see also Dolan v. Project Constr. Corp*., 725 F.2d

1263, 1266 (11th Cir. 1984) (same).

Here, this case involves only an FLSA "opt-in" collective action and not a Federal Rule 23

"opt-out" class action. Accordingly, upon joining this matter, Eligible Settlement Members each

executed a Consent to Join Form which expressly stated in relevant part "I designate Shavitz Law

Group, P.A. ("SLG") to represent me and make decisions on my behalf concerning the litigation

and any settlement. . . . I agree to be bound by any adjudication of this action by a court, whether

it is favorable or unfavorable," giving the Named Plaintiff and Plaintiffs' Counsel, in their

professional judgment, authority to resolve this matter on their behalf. D.E. 48-1 at 6. Regardless

of the authority bestowed upon Named Plaintiff and Plaintiffs' Counsel, Eligible Settlement

Members who elect not to participate in the settlement will not be bound by the negotiated release

---

worked unpaid overtime hours each week with ADMI's knowledge and at ADMI's direction, and faced common
defenses asserted by ADMI, including the applicability of the executive and administrative exemptions, the "lack of
willfulness defense," and the "good faith" defense, among others. *See Goldsby v. Renosol Seating, LLC*, 294 F.R.D.
649, 656 (S.D. Ala. 2015). Defendant's position here is without prejudice to asserting the contrary position in any
other actions, or in this action should the Court deny the instant Motion and litigation continue.

of claims, but will, of course, be bound by the final judgment entered in the litigation.  Accordingly, there is no need for an objection process here as Eligible Settlement Members, who are provided a minimum of a 90-day window to consider the settlement terms, will not be bound by the settlement and release of claims unless they voluntarily choose to participate.

## V.   CONCLUSION

The settlement is reasonable and fair in all respects, particularly considering that at all times this litigation was vigorously contested.  Accordingly, the parties respectfully request the Court approve the settlement as a fair and reasonable compromise of these contested FLSA claims.

**WHEREFORE**, the parties respectfully request this Court enter an Order (1) approving as fair, adequate and reasonable the $1,780,000.00 settlement set forth in the Agreement (Exhibit 1); (2) approving the proposed Notice Form attached to the Agreement (Exhibit B thereto), and the proposed distribution method; (3) appointing Rust Consulting, Inc. as the Settlement Administrator; (4) dismissing the lawsuit with prejudice; (5) awarding Plaintiffs' Attorneys fees and costs in the amount of $593,333.33 and $21,428.27, respectively; (6) awarding a Service Award of $10,000.00 to the Named Plaintiff; (7) retaining jurisdiction to enforce the settlement; and (8) grant any other further relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED THIS 27TH DAY OF MARCH, 2018:

**s/ PAOLO C. MEIRELES**
Paolo C. Meireles, Esq.
E-mail: pmeireles@shavitzlaw.com
Gregg I. Shavitz, Esq.
E-mail: gshavitz@shavitzlaw.com
**SHAVITZ LAW GROUP, P.A.**
1515 S. Federal Hwy., Suite 404
Boca Raton, FL 33432
Telephone: 561-447-8888
Facsimile: 561-447-8831

**s/ CLAIRE DEASON**
Claire Deason, Esq. (*admitted pro hac* vice)
Email: cdeason@littler.com
Andrew Voss, Esq. (*admitted pro hac* vice)
Email: avoss@littler.com
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2136

Theresa M. Waugh, Esq.
Email: twaugh@littler.com

***Counsel for Plaintiff and the FLSA
Collective***

**LITTLER MENDELSON, P.C.**
111 North Magnolia Avenue
Suite 1250
Orlando, FL 32801
Telephone: 407.393.2900
Facsimile: 407.393.2929

***Counsel for Defendant***